UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

CLAUDIA B.[1],                                    )
                                                  )
          Plaintiff,                              )
                                                  )
     v.                                           )        CIVIL NO. 3:21cv674
                                                  )
KILOLO  KIJAKAZI, Acting                          )
Commissioner of Social Security,                  )
                                                  )
          Defendant.                              )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.      The claimant has not engaged in substantial gainful activity since June 20, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: seizure disorder, headaches, and chronic obstructive pulmonary disorder (COPD) (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to noise, vibration, fumes, odors, dust, gases, and poor ventilation. She should avoid all exposure to unprotected heights, open flames, large bodies of water, unguarded moving machinery, and operation of a motorized vehicle.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on September 29, 1968 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 20, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 25-32).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

3

Plaintiff filed her opening brief on April 19, 2022.  On May 31, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on July 13, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

On August 18, 2018, Plaintiff presented to the emergency room after losing consciousness. (Tr. 275) She explained she had a history of recurrent seizures which had previously been treated successfully with Dilantin. *Id*. The attending physician questioned whether her episode was a somatic response to her prior experience of seizures.

A month later, an EEG study of Plaintiff was normal. (Tr. 317) In October 2018, Plaintiff

presented to Dr. Jody Neer, a neurologist. (Tr. 313) Dr. Neer noted Plaintiff's recent experience of seizures had occurred while driving a car and while operating a forklift at work. *Id*. Dr. Neer advised Plaintiff to start Keppra in addition to her Dilantin and instructed her not to drive a vehicle. (Tr. 316)

Plaintiff returned to Dr. Neer on January 16, 2019 and complained of five seizures since she last presented to him with one witnessed and described as "looking into space" and "could not remember dates or names." (Tr. 309). On January 28, 2019, Plaintiff underwent an MRI of her brain secondary to her history of epilepsy. (Tr. 271) The MRI revealed "findings suggestive of left mesial temporal sclerosis" and "white matter hyper signal intensities." *Id*.

On February 7, 2019, Plaintiff returned to Dr. Neer and complained of a recent episode during which she had a seizure while driving, hit a pole, and woke up 10-15 minutes later with someone knocking on her window. (Tr. 303) Dr. Neer increased her Keppra. One month later, Plaintiff informed Dr. Neer she had experienced 7-8 seizures since her previous visit. (Tr. 297) In June 2019, Plaintiff informed Dr. Neer that she believed she had been seizure free since March but had developed migraine headaches in the interim.

In January of 2020, Plaintiff underwent a Neurotelemetry Video EEG. Interpreting physicians deemed the study indicative of "frequent right temporal sharps and spikes" and "occasional left temporal spikes with maximum T1 and F7 electrodes." (Tr. 408). The study was "abnormal." *Id*. Dr. Dragos Sabau opined the study was "consistent with an area of focal cortical irritability and process of epileptogenic potential indicating risk for focal onset seizures." (Tr. 413)

On January 31, 2020, Plaintiff presented to Nurse Practitioner Susan Hunt of IU Health

Neurology for follow up on her epilepsy. NP Hunt noted Plaintiff had experienced a traumatic brain injury as a child and went many years without seizures before her recurrence which started in 2018. (Tr. 416) NP Hunt opined, "medication side effects as far as memory and energy go. This renders her unable to work which is understandably frustrating as she would like to be able to do so." *Id*. On February 6, 2020, Dr. Joshua Martin, who oversaw NP Hunt's care of Plaintiff, opined that she "is unable to work or operate a vehicle due to her diagnosis of focal epilepsy." (Tr. 420)

In June 2020, Plaintiff presented to Dr. Martin and complained that while her seizures were relatively controlled during the day, her medications had caused recurring migraines and memory difficulties. (Tr. 441) Dr. Martin told Plaintiff to continue her medications as prescribed and that "we may consider neuropsychologic testing in the future" if memory impairment persisted. *Id.*

On February 8, 2021, Plaintiff presented for an ALJ hearing, via telephone. (Tr. at 40) She was represented by an attorney, Michael Nasser. *Id*. A vocational expert (VE), Milly Droste, also appeared and testified. *Id*. Plaintiff testified that she did not know how often she had seizures because she was not conscious of their occurrence when they happened, but could only tell based upon residual effects of body aches a day later or a sore tongue from biting it during the episode. (Tr. 44-45) She later testified the last seizure she was actually cognizant of was in April of 2019 while operating a forklift at work. (Tr. 60) Plaintiff explained her driving privileges were revoked due to three seizure-induced car accidents. (Tr. 46) Additionally, Plaintiff testified that she experienced frequent headaches which "pretty much have [her] down in a dark room" and after her medicine "kicks in, I'm asleep for two to three hours." (Tr. 49)

After Plaintiff concluded her testimony, the ALJ called the VE to testify. (Tr. 61) The ALJ

6

asked the VE to consider a hypothetical individual with the same limitations she ultimately assigned to Plaintiff in the RFC assessment and to testify whether such a person could perform any of Plaintiff's past relevant work or a significant number of other jobs in the national economy. (Tr. 66) The VE testified that while such an individual could not perform any of Plaintiff's past relevant jobs, they could perform a significant number of other jobs in the national economy. (Tr. 67) In closing, the VE testified that off-task time which exceeded 9% or 37 minutes per work day would not be tolerated by any employer. (Tr. 69) Additionally, absences in excess of 6-8 per year would likewise result in termination. *Id*.

In support of remand, Plaintiff argues that the ALJ erred in assessing an RFC which did not reflect any need for time off task to address Plaintiff's focal seizures or migraine headaches which developed after she began treating her seizures with medications. While the ALJ acknowledged Plaintiff's seizure disorder and migraine headaches were each "severe impairments" which the agency defines as any impairment "which significantly limits your physical or mental ability to do basic work activities" (20 CFR § 416.920(a)(4)(ii)), the ALJ assessed no unscheduled time off task as part of the RFC to deal with the actual occurrence of a seizure or migraine headache. (Tr. 28) By implicitly concluding that Plaintiff's seizures or migraines would never result in unscheduled time off task within a work setting, the ALJ rejected an opinion provided by Plaintiff's treating neurologist which was wholly consistent with the view that Plaintiff would experience time off task while attempting to work due to her focal seizures. (Tr. 420). Thus, Plaintiff argues that the ALJ did not support her Step Five conclusion that someone with all of Plaintiff's limitations could perform a significant number of jobs in the national economy. (Tr. 28-30)  Because the Social Security Administration bears the burden of

proof at Step Five of the decision, when questioning a VE, an ALJ is required to orient the witness to the totality of a claimant's limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Simila v. Astrue*, 573, F.3d 503, 520 (7th Cir. 2009). The hypothetical question to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). Here, the ALJ acknowledged Plaintiff's seizure disorder and migraine headaches were severe impairments which would actually occur at some point. Yet the RFC and the corresponding hypothetical questions to the VE do not reflect any time off task whatsoever. The ALJ's decision includes no logical and accurate connection to the evidence in the record which provides this Court an ability to meaningfully review the ALJ's RFC assessment that Plaintiff would never experience time off task. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir, 2009); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). While the ALJ apparently believed that she provided for preventative measures to prevent the occurrence of seizures and migraines, there is no medical evidence in the record to support the view that Plaintiff's seizures or migraines were solely related to things like "noise, vibration, fumes, odors, gases and poor ventilation" as the ALJ seemingly concluded. (Tr. 28) Rather, Plaintiff had objective imaging of scarring (commonly associated with focal epilepsy) on her brain. (Tr. 271) The idea that reducing exposure to noise and/or vibration would eliminate the occurrence of Plaintiff's migraines and seizures is wholly unfounded. Moreover, the ALJ's finding that Plaintiff would require work which would allow her to avoid "all exposure to unprotected heights, open flames, large bodies of water, unguarded moving machinery, and operation of a motorized vehicle" is effectively an admission a seizure would occur at some point and that Plaintiff could

not be exposed to hazards that would put her at great risk of severe bodily harm or even death in

such an instance. Clearly, the ALJ needed to also account for the occurrence of those seizures in

the form of time off task. Obviously, if Plaintiff were to experience a seizure in the workplace she

would be off-task for some period of time. The ALJ's assessment of an RFC which did not

account for off-task time lacks the requisite logical bridge to the evidence in the record. Thus,

remand is required so that the ALJ may assess time off task, in both the RFC and hypothetical

questions to the VE.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED

AND REMANDED for further proceedings consistent with this Opinion.

Entered: July 28, 2022.


s/ William C.  Lee
William C. Lee, Judge
United States District Court